ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

AISHA CHAPMAN,

                    Plaintiff,

    -against-

GLENN GOORD, Commissioner of the New York
Department of Corrections; SUSAN SCHULTZ,
Superintendent of Mid-Orange Correctional Facility;
LINDA "ROE", Infection Control Nurse at Mid-
Orange Correctional Facility; CINDY MURPHY,
Nurse Administrator at Mid-Orange Correctional
Facility, and JOHN AND JANE DOES I-X; all sued in
their individual capacities,

                    Defendants.

-----------------------------------------------------------------X

FILED
U.S. DISTRICT COURT

2005 APR 13  P 12: 38

S.D. OF N.Y. W.P.

**COMPLAINT**     *ECF CASE*

**JURY TRIAL DEMANDED**

**05 CIV. 3781**

*Judge McMahon*

       By and through her counsel, Thornton, Bergstein & Ullrich LLP, plaintiff complains of defendants as follows:

### I.    **INTRODUCTION**

       1.  Plaintiff Aisha Chapman brings suit to redress the violation of her rights under the First and Fourteenth Amendments of the United States Constitution and New York State law.

### II.    **PARTIES**

       2.  Plaintiff resides in the County of Sullivan, State of New York, within this judicial district.

       3.  Defendant Glenn Goord is Commissioner of the New York State Department of Corrections ("DOCS").  His actions and omissions herein were taken under color of State law.

       4.  Defendant Susan Schultz is Superintendent of Mid-Orange Correctional Facility, a unit of DOCS.  Her actions and omissions herein were taken under color of State law.

5. Defendant Linda "Roe" is the Infection Control Nurse at Mid-Orange Correctional Facility. Her actions and omissions herein were taken under color of State law.

6. Defendant Cindy Murphy is the Nurse Administrator at Mid-Orange Correctional Facility. Her actions and omissions herein were taken under color of State law.

7. Defendant John and Jane Does I-X are agents and employees of DOCS whose specific identities are currently unknown to plaintiff. Their actions and omissions herein were taken under color of State law.

II.    **JURISDICTION**

8. This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. secs. 1331, 1343 (3) and (4) and 1367 and 42 U.S.C. secs 1983 and 1988. This Court has jurisdiction over the related State claims which arise from the same nucleus of operative facts as the federal causes of action.

III.    **FACTUAL AVERMENTS**

9. Plaintiff is a single mother living in Napanoch, New York. Since in or about May 2001, she was employed by Medi-Labs as a certified phlebotomist assigned to work at various State prisons in the mid-Hudson Valley.

10. As a phlebotomist, plaintiff drew blood of inmates and prepared those blood samples for various types of medical testing.

11. In 2004, plaintiff's assigned prisons included Napanoch, Ulster, Woodburne and Mid-Orange Correctional Facilities. All of these facilities are in the DOCS system.

12. Plaintiff was assigned to Mid-Orange on Wednesdays and Fridays.

13. In or about late October 2004, while working at Mid-Orange, plaintiff was drawing

2

blood from several inmates.  In order to draw their blood and prepare it for testing, plaintiff

needed requisition forms prepared by the facility's nurses.  Mid-Orange had a tendency not to

timely provide plaintiff with requisition forms, sometimes causing inmates to wait for long

periods of time before they could have their blood drawn.  As inmates needed to abstain from

eating [or drinking] for some period of time before the procedure, a lengthy wait could pose

health problems, depending on the inmate's medical condition.

14.   On this particular occasion, the facility did not provide plaintiff with a requisition

form for a diabetic inmate, forcing him to wait for several hours without food or drink.  When

plaintiff brought this situation to the attention of Cindy Murphy, the facility's Nurse

Administrator, Linda "Roe," who was in the vicinity, responded that plaintiff had no reason to be

concerned as the diabetic was "nothing but a State inmate."  Plaintiff, who had rarely if ever

spoken with Roe, expressed disagreement with Roe's comments and stated that the inmate's

health condition was important, regardless of his status as a State inmate.  Roe became visibly

upset over plaintiff's statements.

15.   Thereafter, on that same day, Roe falsely suggested to plaintiff that she had heard

plaintiff engage in an inappropriate conversation with an inmate serving as a porter in the

medical unit.  In response, plaintiff – who viewed Roe's hostility and false innuendo as a direct

response to plaintiff's earlier having expressed disagreement with Roe over the issue of inmate

care – told Roe to mind her own business.

16.   Upon her return to Mid-Orange in early November, facility staff informed plaintiff

that Roe had been accusing her of engaging in inappropriate sexual conversation with the porter.

Plaintiff was told to "watch your back."

3

17. Not wanting to allow unfounded rumors to fester, plaintiff confronted Roe about these falsehoods. Roe feigned ignorance and suggested that she was just concerned about plaintiff, stating "you're a pretty girl and you could get jumped at any time."

18. Plaintiff spoke with Murphy, the Nurse Administrator, about her concerns that Roe was making these false statements in retaliation for speaking out about the importance of providing proper medical care to inmates regardless of their status as "State inmates."

19. Murphy then informed plaintiff that Roe had submitted a write-up about plaintiff to the facility's administration. She did not tell plaintiff what Roe had stated in the write-up. Murphy told her not to worry about it and to let it go.

20. Shortly thereafter, in early December 2004, plaintiff was told that she would now have to work out of a storage room. This was a small, remote room which was directly across from the [male] inmates' bathroom (which lacked a door). Plaintiff voiced concerns to Murphy about this location re-assignment, namely that the room was visibly unsafe, as it contained exposed asbestos, was relatively far removed from correctional staff in the event plaintiff encountered a violent inmate and was directly across from the mens' bathroom. Murphy, who had previously been friendly toward plaintiff, became hostile and said she was just going to have to deal with it.

21. Thereafter, plaintiff requested that her Medi-Labs supervisor, Terry Tucker, set up a meeting to straighten out her concerns about Mid-Orange.

22. A meeting was held on December 15, 2004 with plaintiff, Tucker, Murphy, the facility's Deputy Warden and Mid-Orange Superintendent, Susan Schultz.

23. Schultz started the meeting by stating that she had received a disturbing write-up

4

from the Infection Control Nurse, Linda Roe, and she believed Roe.  She did not say what was in the write-up or ask any questions about it, but flatly stated that she believed whatever it said about plaintiff.

24.  When Tucker said there were two sides to every story, Schultz began to state what was in the write-up as fact.  She said plaintiff had been in the former blood-taking room with the porter who was sitting on the table shirtless, and they were having a sexually explicit conversation before plaintiff closed the door and was alone with the porter for 45 minutes.  These allegations were absolutely untrue.   Schultz then stated, "We don't want her [plaintiff] here anymore."

25.  Tucker then stated that Roe was simply trying to get back at plaintiff because she had raised a concern about patient care in the case of the diabetic inmate.   Schultz said she did not want to hear anything about it and wanted plaintiff gone.  Tucker noted that after plaintiff stated her concern about inmate care, she was re-assigned to the storage room, which was unsafe and inadequate.  Schultz turned a deaf ear and reiterated that she did not want plaintiff at the facility.  She also demeaningly suggested that plaintiff, who is African-American, had complained that she was sent to the storage room because she was black, saying "Let's talk black in back crap."  Murphy also said she did not want plaintiff to work at the facility anymore.

26.  Tucker said that plaintiff would have to continue at Mid-Orange until Medi-Labs could find someone to replace her at that facility.

27.  Plaintiff returned to Mid-Orange the following week on December 22, 2004 and performed her work without incident.  Murphy was out on leave that date.

28.  On December 23, 2004, Tucker informed plaintiff that she had been advised that

5

plaintiff had been "locked out" of all DOCS prisons and she could not continue to work while DOCS was investigating her.

29.   In January 2005, plaintiff's sister received two letters from the inmate porter (Richardson) with whom Roe had falsely accused plaintiff of acting inappropriately.  Richardson stated that prison officials had come to him and told him he could say that he had sex with plaintiff.  In addition, he asked about plaintiff's birthday by date, personal information which she had never shared with him or any other inmate at Mid-Orange.

30.   Plaintiff reasonably became extremely frightened and disturbed at the content of Richardson's letters and the fact that they reached her sister at all, as outgoing inmate mail is limited.

31.   Shortly thereafter, plaintiff received a telephone call at home from a person identifying himself as "Will" and a former inmate from Mid-Orange.  Will suggested that he wanted to see her.  Plaintiff asked him not to call back.  Plaintiff does not know how "Will" got her home telephone number.  Since that time, Will has telephoned plaintiff according to plaintiff's caller ID log, though she has not talked with him.  Plaintiff no longer answers her telephone out of fear that it will be "Will" or some other inmate is calling.

32.   Plaintiff has been advised that defendants and/or their agents at Mid-Orange have been telling staff and inmates that plaintiff had sexual relations with inmates there.

33.   On February 8, 2005, plaintiff, through her recently retained legal counsel, wrote a letter to defendant Goord and defendant Schultz (incorrectly identified at the time as Gail Thomas) detailing the facts underlying plaintiff's treatment, including the fact that DOCS appeared to be retaliating against plaintiff for her speech about inmate care, which is a matter of

6

public concern protected by the First Amendment.

34. On February 23, 2005, through legal counsel, Goord responded that "it is alleged that Ms. Chapman may have had inappropriate communications with one or more inmates in DOCS' custody" and that "it would be inadvisable to comment further about those allegations at this time. As soon as the Department's review is completed, Ms. Chapman, you, and Ms. Chapman's employer will be advised of additional details."

35. To date, DOCS has not provided any "additional details" to plaintiff or her counsel. Nor has it sought to question plaintiff in any manner, despite her counsel's express invitation to do so.

36. Defendants' actions and omissions in this matter have been malicious and/or wanton and have caused plaintiff to suffer extreme emotional distress, fear and anguish, as well as lost income and benefits.

## IV.    CAUSES OF ACTION

37. Plaintiff incorporates paras. 1-36 as if fully restated herein.

38. In violation of the First Amendment, as made actionable by 42 U.S.C. § 1983, defendants have retaliated against plaintiff because of her protected speech on matters of public concern, namely the importance of providing adequate medical care to inmates and her legitimate concerns about workplace safety.

39. As set forth above, in violation of plaintiff's rights under Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983, defendants have stigmatized plaintiff by falsely suggesting that she had sexual relations or engaged in sexual conduct with inmates at Mid-Orange while also barring her from working at State prisons, thereby affecting her livelihood and

7

ability to earn a living.

40. As set forth above, defendants have violated plaintiff's rights to substantive and procedural due process under the Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983, in that their actions and omissions, taken under color of State law, are outrageous and shocking to the conscience and they provided plaintiff no process before stigmatizing her through false allegations and adversely affecting her livelihood.

41. In violation of plaintiff's privacy rights under State law, defendants Roe, Murphy, Schultz and Does I-X have disseminated, or allowed to be disseminated, personal information about plaintiff to inmates at Mid-Orange.

42. In violation of plaintiff's rights under State common law, defendants Roe, Murphy, Schultz and Does I-X have defamed plaintiff by falsely and maliciously stating that she engaged in inappropriate sexual conduct with an inmate or inmates at Mid-Orange.

V.    **PRAYER FOR RELIEF**

43. WHEREFORE, plaintiff prays that this Honorable Court:

a) empanel a jury to hear and decide this matter;

b) award to plaintiff compensatory damages, including damages for lost pay and benefits and past and future emotional distress, against the defendants jointly and severally;

c) award to plaintiff punitive damages against the individual defendants for their egregious violations of plaintiff's rights which must be punished and deterred;

d) award to plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. section 1988, and

e) enter any other relief justified by the law and facts.

8

Dated: April 8, 2005
      Chester, New York

Respectfully submitted,

Christopher D. Watkins (CW 2240)

THORNTON, BERGSTEIN & ULLRICH LLP
15 Railroad Ave.
Chester, New York 10918
(845) 469-1277
Attorneys for Plaintiff

9